THERIOT, J.
I ?The intervenors/appellants, Terrebonne Parish School Board (TPSB) and Midwest Employer’s Casualty Company (Midwest), appeal the Thirty-second Judicial District Court’s ruling sustaining an exception of no right of action in favor- of the defendant/appellee, Louisiana Patient’s Compensation Fund (PCF). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 24, 2008, Roland LeCompte, an employee of TPSB, sustained injuries during'the course and scope of his employment when he fell eight feet from a ladder. He was immediately brought to the emergency room (ER) of Terrebonne General Medical Center (TGMC) for the injuries sustained to his hip, knee,-and elbow. Mr. LeCompte was treated by Dr. Michael Isabell [1], who ordered x-rays for his knee and hip, but not for his elbow. Mr. LeCompte’s wound' to his elbow was sutured without x-rays being taken.
Mr. LeCompte was discharged from TGMC the same day, but was called back to the ER when the x-rays taken of his hip indicated a possible fracture. On this second visit to the ER, x-rays were taken of his elbow. Mr. LeCompte was readmitted to TGMC for treatment of his hip and elbow.
The otherwise minor laceration to Mr. LeCompte’s elbow became severely infected due to the foreign material being left inside it. The infected tissue contained *1008 what is commonly known as “flesh-eating bacteria,” and the infection was nearly fatal for Mr. LeCompte. Although the infection was ultimately treated successfully, Mr. LeCompte developed another serious condition from the infection, called chronic inflammatory demyelinating polyneuro-pathy, or CIDP. Mr. LeCompte had to receive ^ongoing treatment for this debilitating condition. Mr. LeCompte was approximately 49 years old at the time of his accident, and it is estimated that he will continue to require treatment for CIDP for the rest of his life.
On February 2, 2012, a medical review panel (MRP) concluded that Dr. Isabell failed to comply with the appropriate standard of care as charged in the complaint against him, but that it was not a factor in the resultant damages. The MRP’s reasons state that Dr. Isabell should have ordered an x-ray of Mr. LeCompte’s injured elbow, but that his failure to do so did not change the fact that the wound was going to be infected. On April 5, 2012, Mr. LeCompte and his wife filed a petition for damages against Dr. Isabelle and his liability insurer, Continental Casualty Company, alleging that Dr. Isabell committed medical malpractice for the aforementioned reasons. Mr. LeCompte claimed in the petition that at the time of its filing, he had incurred $268,000.00 in expenses related to Dr. Isabell’s malpractice and would continue to incur expenses.
On May 1, 2012, TPSB and Midwest (hereafter “intervenors”) filed a petition for intervention in the malpractice lawsuit. They allege that Mr. LeCompte suffered the injury during the course and scope of his employment with TPSB, and thus TPSB had been paying his medical expenses pursuant to the Louisiana Workers’ Compensation Law. Midwest claimed in the petition for intervention that it provided workers’ compensation insurance to TPSB for amounts in excess of $300,000.00. The intervenors claimed they were entitled to reimbursement for sums they had paid to or on behalf of Mr. Le-Compte in workers’ compensation benefits, which could arise from an award of damages to Mr. and Mrs. LeCompte through a trial or compromise in their medical malpractice action.
|40n April 28, 2015, Mr. and Mrs. Le-Compte filed a motion to dismiss their claims against Dr. Isabell and Continental with prejudice, and the accompanying order was signed by the trial court the next day.[2] Also, on April 28, 2015, the interve-nors filed an amending and supplemental petition for intervention, claiming that they were legally subrogated to the rights of Mr. LeCompte and were entitled to recover damages against Dr. Isabell and Continental up to the amount of benefits or compensation paid and to be paid on behalf of Mr. LeCompte and his dependents.
On August 24, 2015, the intervenors filed a petition to approve the settlement of the medical malpractice claims and admit Dr. Isabell’s liability with a reservation of rights for excess damages against the PCF. The intervenors claimed in the petition that Dr. Isabell had paid $100,000.00 to settle their claims against him, and by his payment admitted his medical malpractice. On September 17, 2015, the trial court approved the settlement thereby dismissing Dr. Isabell and Continental with prejudice; however, the trial court named Dr. Isabell as a nominal defendant only to the extent necessary for the intervenors to recover excess damages against the PCF.
On May 12, 2016, the PCF filed exceptions of no right of action and no cause of *1009 action, as well as a motion for summary judgment in the alternative. In its supporting memorandum, the PCF argued that the intervenors could not continue the litigation after Mr. LeCompte, as the plaintiff, dismissed the underlying claim with prejudice. After a hearing, the trial court granted the PCF’s exception of no right of action and declared the exception of no cause of action, motion for summary judgment to be moot, dismissing the PCF’s matter with prejudice. In its oral reasons for judgment, the trial court stated that under the Louisiana Medical Malpractice | sAct (LMMA), only natural persons have a right to pursue excess damages from the PCF, and since the intervenors are juridical persons, they have no such right of action. It is this judgment that the interve-nors appeal.
ASSIGNMENTS OF ERROR
The intervenors allege four assignments of error:
1. The trial court’s ruling that the in-tervenors are not “claimants” as defined by the LMMA is legal error.
2. The trial court committed legal error by failing to recognize that the intervenors’ independent cause of action pursuant to Louisiana Workers’ Compensation Law against third persons like Dr. Isabell was not lost because Mr. LeCompte unilaterally dismissed his personal claims.
3. The trial court committed legal error by allowing the PCF to have standing to raise any exceptions after the intervenors’ settlement with Dr. Isabell was approved pursuant to the LMMA.
4. The trial court committed legal error by not ruling that the PCF judicially admitted that the intervenors’ claims were subject to the LMMA.
STANDARD OF REVIEW
The standard of review of a ruling on an exception of no right of action, which presents a question of law, is de novo. See Lakewood Prop. Owners’ Ass’n v. Smith, 2014-1376 (La. App. 4 Cir. 12/23/15), 183 So.3d 780, 785, writ denied, 2016-0138 (La. 2/26/16), 187 So.3d 469. The function of an exception of no right of action is a determination of whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. See La. C.C.P. art. 927. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation. Badeaux v. Southwest Computer Bureau, Inc., 2005-0612 (La. 3/17/06), 929 So.2d 1211, 1217.
[^DISCUSSION
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties by joining with the plaintiff in demanding the same or similar relief against the defendant. La.C.C.P. art. 1091(1). This is precisely what the intervenors had set out to do when they filed their petition for intervention and adopted the language of Mr. LeCompte’s original petition for damages.
A “claimant” under the LMMA is defined as “a patient or representative or any person... seeking or who has sought recovery of damages or future medical care and related benefits under this Part. All persons claiming to have sustained damages as a result of injuries to or death of any one patient are considered a single claimant.” La. R.S. 40:1299.41.[3] Although *1010 intervenors áre not directly addressed in the LMMA, we agree with the intervenors that they fit the definition of a “claimant.”
The right to recover future medical care and related benefits is included in La. R.S. 40:1299.43(C), as follows:
Once a judgment is entered in favor- of a patient who is found to be- in need of future medical care and related benefits that will be incurred after the date of the response to the special interrogatory by the jury or the court’s finding or a settlement is reached between a patient and the patient’s compensation fund in which the provision of medical care and related benefits that will be incurred after the date of settlement is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient’s compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider’s malpractice unless the patient refuses to allow them to be furnished.
|7As the district court pointed out, a “patient” as defined by the LMMA is a natural person. See La. R.S. 40;1299.41(A)(15). The statute does not impute the rights of La. R.S. 40:1299.43(C) to a “claimant.” Also, since a judgment was never entered in Mr. LeCompte’s favor for future medical care and related benefits, nor was a settlement reached between Mr. LeCompte and the PCF, the right imputed under this statute was never triggered. Furthermore, in rendition of such a judgment, the finder of fact must answer the question of whether the plaintiff is warranted an award of -future medical expenses before extra damages from the PCF can be pursued. See Hanks v. Seale, 2004-1485 (La. 6/17/05), 904 So.2d 662, 672. Louisiana Revised Statutes 40:1299.43(C) further states that the patient “may” make a claim to the'PCF, suggesting ‘ that the right of action originates with the patient and may only be exercised by the patient.
The Louisiana Supreme Court stated in Hanks, 904 So.2d at 670, that the legislature amended the LMMA to afford “malpractice victims recovery for future medical care and related benefits.” (Emphasis added.) The word “victim” is also frequently used in Kelty v. Brumfield, 633 So.2d 1210 (La. 1994), in discussing the future medical care provisions of the LMMA:
The [LMMA],.. must be strictly construed because [it] grant[s] immunities or advantages to special classes in derogation of the general rights available to tort victims.... Moreover, because the cap on damages imposed by.each act harshly impacts the most severely injured victims, mitigating benefits or advantages provided for them by the laws must be liberally construed, and any disparity of treatment between such claimants... will be given careful scrutiny.... (Emphasis added.)
Id. at 1216.
We note that the word “claimants” is used in the above excerpt; however, as it is qualified as “such claimants,” referring back to “victims," it prefers only to one specific subset of claimants.[4] According to Black’s Law Dictionary, 6th Ed., a “victim” is a “person who is the object of a crime or tort.” While the definition further states that a person'who is a victim “may be individual, public Or private corporation, government, partnership, or unincorporat *1011 ed association,” under the circumstances of the instant case, the only person who can be the object of the tort of medical malpractice is the patient. Therefore, when the legislature intended for the LMMA to extend special rights of recovery to malpractice “victims,” the intent was to extend those rights to “patients.” Under the LMMA’s clear definition of “patient,” a person who has a right to claim future medical expenses from the PCF must be a natural person.
With respect to the PCF’s standing to raise the exception of no right of action in the instant case, we must first determine the PCF’s party status at the time the exception was filed. The Louisiana Supreme Court has stated that the LMMA neither contemplates the PCF as a party defendant, nor gives the PCF status as a co-obligor or insurer of the health care provider. Rather, the PCF is a statutory intervenor who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of $100,000.00 are payable by the PCF. Khammash v. Clark, 2013-1564 (La. 5/7/14), 145 So.3d 246, 254. Therefore, the PCF in the instant casé became an inter-venor in its own right once the intervenors settled with Dr, Isabell and Continental and then pursued damages in excess of the $100,000.00. See Id.
Louisiana Revised Statutes 40:1299.44(C)(5) makes it clear that when a malpractice claimant settles with a qualified health care provider or his insurer for $100,000.00, that settlement triggers the PCF’s liability for |nexcess damages under La. R.S. 40:1299.42(B)(3). St. Romain v. Luker, 2000-1366 (La. App. 1 Cir. 11/9/01), 804 So.2d 85, 87, writ denied, 2002-0336 (La. 4/19/02), 813 So.2d 1083. The settlement in the instant case constituted a statutory admission of liability on the part of Dr. Isabell, one that the PCF was precluded from contesting.' However, the PCF is not attempting to contest the liability of the health care provider, but rather the right of the intervenors to seek excess damages from the PCF. We can find no jurisprudence that disallows the PCF from raising exceptions regarding anything other than the liability of the health care provider. We therefore find that the PCF has standing to raise the exception of no right of action in the instant case.
As to the contention that the PCF judicially admitted its liability and obligation to’pay excess damages, we can find no such admission in the record. A judicial confession or admission is an express acknowledgement of an adverse fact made by a party in a judicial proceeding and constitutes full proof against the party who made it. See La. C.C. art. 1853; Cordon v. Parish Glass of St. Tammany, Inc., 2015-1078 (La. App. 1 Cir. 4/15/16), 195 So.3d 109, 112, writ denied, 2016-0896 (La. 9/6/16), 205 So.3d 918. An admission made in an answer also falls within the ambit of La. C.C. art. 1853. Norwel Equipment Co. Ltd. Partnership v. Hardy, 2000-00934 (La. App. 3 Cir. 12/6/00), 773 So.2d 905, 907-908. No such express acknowledgement by the PCF exists in the record. While the PCF acknowledged the liability of Dr. Isabell under the LMMA, the PCF never expressly acknowledged its own liability to the intervenors.
DECREE
The granting by the Thirty-Second Judicial District Court of the exception of no right of action filed by the -appellee, the Louisiana Patient’s | ^Compensation Fund, is affirmed, and the petition of the appellants, Terrebonne Parish School Board and Midwest Employer’s Casualty Company, is dismissed with prejudice. All costs of this appeal are assessed to the appellants, Ter-rebonne Parish School Board,
AFFIRMED.
*1012 Chutz, J concur
Higginbotham, J. concurs.

. Dr. Isabell’s name is spelled both as "Isa-bell" and "Isabelle” throughout the record. For consistency, we will use the former spelling throughout this opinion.

. The record does not give a clear indication as to why Mr. and Mrs. LeCompte filed this motion.

. The LMMA was re-designated as La. R.S. 40:1231 to 1231.10 by House Concurrent Res *1010 olution No. 84 of the 2015 Regular Session, with an effective date of June 2, 2015. Here .and throughout we refer to the prior version of the LMMA, which was in effect throughout the time period in question.

. Also, Kelty predates the addition of the definition of "claimant” to the LMMA by 2008 La. Acts No, 558, § 1.